**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**CASE NO. 21-cv-62056-ALTMAN/Strauss**

**ROSEMARY DALY, D.O.**,

     *Plaintiff*,

*v.*

**MARKEL SERVICE INCORPORATED**,

     *Defendant.*

_____/

**<u>ORDER ON MOTION TO DISMISS</u>**

The Plaintiff, Dr. Rosemary Daly, has filed her Second Amended Complaint ("SAC") [ECF No. 59], asserting five causes of action: two for declaratory judgment (Counts 1 and 2), *see id.* at 10–12; two for defamation per se (Counts 3 and 4), *see id.* at 13–15; and a fifth for breach of fiduciary duty (Count 5), *see id.* at 16–17. Our Defendant, Markel Service Incorporated ("MSI"), responded with its Motion to Dismiss Plaintiff's Second Amended Complaint ("Motion" or "MTD") [ECF No. 88]— asking us to dismiss Daly's case in full, *see id.* at 21 ("For all of the foregoing reasons and others appearing on the record, MSI respectfully requests that the Court dismiss the SAC in its entirety with prejudice.").[1]

We referred the MTD to U.S. Magistrate Judge Jared M. Strauss, *see* Order of Referral [ECF No. 115] at 1, who concluded that, while Dr. Daly "ha[d] sufficiently alleged defamation per se claims based on MSI's reports filed in the NPDB," Report and Recommendation (the "R&R") [ECF No. 120] at 16, she "ha[d] not sufficiently alleged a cause of action for breach of fiduciary duty," *id.* at 19.

---

[1] The Motion to Dismiss is fully briefed. *See* Plaintiff's Opposition Memorandum to Defendant's Motion to Dismiss ("MTD Response") [ECF No. 104]; Defendant's Reply Memorandum in Support of its Motion to Dismiss ("MTD Reply") [ECF No. 111].

Judge Strauss thus recommended that the MTD be denied in part (as to Counts 3 and 4) and granted in part (as to Count 5). *Id.* at 19. Magistrate Judge Strauss also recommended that the declaratory judgment counts (Counts 1 and 2) be dismissed because Dr. Daly "'consent[ed] to the dismissal of [those counts] without prejudice.'" *Id.* at 6 n.6 (citing Plaintiff's Response to Declaratory Judgment Counts [ECF No. 119] at 1). Finally, Magistrate Judge Strauss cautioned the parties as follows:

> The parties will have fourteen (14) days from the date of being served with a copy of this Report and Recommendation within which to file written objections, if any, with the Honorable Roy K. Altman, United States District Judge. Failure to timely file objections shall bar the parties from a de novo determination by the District Judge of an issue covered in the Report and shall bar the parties from attacking on appeal unobjected-to factual and legal conclusions contained in this Report except for plain error if necessary in the interests of justice. See 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140, 149 (1985); *Henley v. Johnson*, 885 F.2d 790, 794 (11th Cir. 1989); 11th Cir. R. 3-1.

*Id.* at 19.

Both parties timely objected to the R&R. *See* Defendant's Objections to the Magistrate's Report and Recommendation ("MSI Objections") [ECF No. 121]; Plaintiff's Objection to Magistrate's Report and Recommendation ("Daly Objections") [ECF No. 122]. The parties then responded to each other's Objections. *See* Defendant's Memorandum of Law in Opposition to Plaintiff's Objection to Magistrate's Report and Recommendation ("Response to Daly Objections") [ECF No. 125]; Plaintiff's Response to the Objections by Defendant Markel Service Incorporated to the Magistrate's Report and Recommendation ("Response to MSI Objections") [ECF No. 126]. After careful review, we **OVERRULE** both Objections and **ADOPT** Magistrate Judge Strauss's R&R in full.

## THE FACTS

### I.     Daly's Factual Allegations

Daly "is board certified in anesthesiology as well as pain management and interventional pain management" and works as "an independent contractor at several clinics" in South Florida—including at a clinic in Coral Gables and a clinic in Weston. SAC ¶¶ 5, 7. At all relevant times, Evanston

Insurance Company ("Evanston") provided insurance coverage to Daly for her practice at the Weston Clinic. *See id.* ¶ 8. Our Defendant (MSI) and Evanston are both "wholly owned by MSI Insurance Company," and MSI "manages the claims and all parts of the claims process for Evanston Insurance." *Id.* ¶¶ 9–10. Daly also had an insurance policy with Landmark America Insurance, which covered her practice at the Coral Gables clinic. *See id.* ¶ 11.

This dispute arises from a medical procedure gone wrong. On May 30, 2018, "a patient of the Coral Gables Clinic underwent a form regenerative therapy." *Id.* ¶ 12. Daly "was not at the Coral Gables Clinic" that day, "did not provide any services to this Patient," did not "supervise those who were the treatment providers," and did not consult the Patient or the treatment providers about "how to treat the Patient." *Id.* ¶¶ 12–13. Unfortunately, the regenerative therapy caused the Patient to "suffer[ ] serious injuries requiring a long hospitalization followed by long term rehabilitative therapy." *Id.* ¶ 14. Because of this botched procedure, the Patient named Daly—among others—in a Notice of Intent to Initiate Litigation for Medical Negligence and Personal Injury ("Notice of Intent" or "NOI") pursuant to FLA. STAT. §§ 766.106(2), 768.208(6)(a). *See id.* ¶ 15.[2] After she was named in the Notice of Intent, Daly "ran into counsel retained by MSI while at the Weston Clinic" and told him that "I was not there that day. I was not supervising." *Id.* ¶ 27. MSI's counsel allegedly responded: "I know, I know. I get it." *Ibid.*

Two months after sending the Notice, the Patient's attorney "served a written monetary demand seeking multi-millions in damages and enclosed a Complaint he intended to file unless the matter was resolved through mediation[.]" *Id.* ¶ 19. We'll refer to this document as "the Draft Complaint." The Draft Complaint "made no allegations against Dr. Daly and did not seek any

---

[2] Daly "does not believe she was ever served with the Notice of Intent" but admits that "she received a copy of the Notice from either one of her former colleagues or from insurance coverage counsel." SAC ¶ 16.

damages against Dr. Daly. In fact, Dr. Daly's name is not mentioned once in the 60 pages." *Id.* ¶ 21. Daly subsequently received a letter from coverage counsel for Landmark, who advised her "to participate in the mediation and [added] that[,] if the limits of the applicable policies were insufficient, Daly, among others, could face personal exposure." *Id.* ¶ 22. Unlike Daly, the "healthcare providers who were alleged in the Complaint to have been involved in the care and treatment of the Patient" regularly "met with defense counsel hired by MSI" and received "reservation of rights letters[.]" *Id.* ¶¶ 25, 30. Nevertheless, Daly attended mediation and ultimately "executed [a] settlement agreement and was given a release in or about May 2019. There was no admission of wrongdoing on her part." *Id.* ¶ 37.

On April 21, 2020, MSI "submitted a written report" to the National Practitioners Data Bank ("NPDB") about Daly. *Id.* ¶ 42. MSI's report stated that "the Patient fell gravely ill" and "suffered a 'permanent injury'" because of Daly's "negligence" and "improper performance." *Id.* ¶¶ 43–44. Specifically, the report's description of the "Principal Injury Giving Rise To The Claim" read as follows:

> AS A RESULT OF THE INSUREDS' NEGLIGENCE, PATIENT SUFFERED FAT EMBOLISM SYNDROME, CYTOKINE RELEASE SYNDROME, A GLOBAL HYPOXIC ISCHEMIC INJURY, AND ASSOCIATED BRAIN DAMAGE. THE PATIENT UNDERWENT MONTHS OF HOSPITALIZATION AND REHABILITATION REQUIRING EXTENSIVE CARE FOR HER PERMANENT AND SEVERE SYMPTOMS.

*Id.* ¶ 58; *see also* Apr. 21, 2020, NPDB Report [ECF No. 38-2] at 4. The NPDB forwarded this report to the Florida Office of Insurance Regulation, Sheridan Healthcorp, Florida's Division of Medical Quality Assurance, and Memorial Healthcare System. *See id.* ¶¶ 45–46. Because of the report, Daly "was rejected for coverage by two professional liability insurers." *Id.* ¶ 47.

Daly submitted a counterstatement to the NPDB, "outlining her complete lack of involvement in the care and treatment of the Patient either as a direct provider or a supervisor of those who were providers." *Id.* ¶ 48. Daly also contacted MSI "to have them correct the April 21, 2020 Report given

the fact that the Demand Letter and Complaint failed to even mention Daly and that the NPDB report constituted an attack on her reputation." *Id.* ¶ 49. When MSI "refused to change its position," *id.* ¶ 50, Daly initiated a dispute resolution process with the NPDB on September 6, 2020, *id.* ¶ 51. In that process, Daly specifically disputed "that 1) she was one of the Patient's treating physicians, 2) she was negligent, and 3) she caused the Patient to suffer a permanent injury." *Id.* ¶ 52. At the suggestion of the NPDB, "MSI correct[ed] some of its factual statements but [did] nothing as to the charge of Negligence and Improper Conduct." *Id.* ¶ 53; *see generally* Mar. 24, 2021, NPDB Report [ECF No. 38-3]. Both the April 21, 2020, NPDB Report and the March 24, 2021, NPDB Report, Daly says, "are demonstrably false as to Dr. Daly and will stigmatize her in her profession for the remainder of her career, potentially interfering with prospective employment, licensing, and insurance coverage." SAC ¶ 57.

## II.   Procedural History

Daly's operative Second Amended Complaint asserts five causes of action against MSI: (1) declaratory judgment "that Defendant MSI did not act in accordance with the NPDB Guidelines when it submitted its written report on April 21, 2020, and thereafter, its corrected report on March 24, 2021," *id.* ¶ 65; (2) declaratory judgment "that MSI should have attempted an allocation of liability based on the absence of any allegations of wrongdoing in the only document that contained a specific monetary demand and the information contained in its files that there were no claims against Dr. Daly," *id.* ¶ 72; (3) defamation per se for the publication of the April 21, 2020, NPDB Report, *see id.* ¶ 76; (4) defamation per se for the publication of the March 24, 2021, NPDB Report, *see id.* ¶ 87; and (5) breach of fiduciary duty for failing "to conduct a good faith investigation into the claims and into Dr. Daly's role (or lack thereof) in the underlying incident," *id.* ¶ 96.

MSI moved to dismiss all five counts of the SAC. *See generally* MTD. *First*, MSI asked us to dismiss the declaratory-judgment counts (Counts 1 and 2) because "there is no actual controversy

between the parties, nor does this Court have subject matter jurisdiction to make the requested declaration." *Id.* at 12. *Second*, MSI said that Daly failed to state a valid defamation per se claim for four reasons: (1) "the statements that Plaintiff contends are defamatory are merely recitations of the 'allegations' of the injured party" and were therefore "truthful regardless of whether the Patient's allegations had merit," *id.* at 16; (2) Daly's allegations "d[id] not satisfy the requirements for pleading defamation per se" under Florida law, *id.* at 17; (3) the NPDB Reports are "subject to a qualified privilege" under Florida law, *id.* at 18; and (4) the NPDB Reports are *also* protected because 42 U.S.C. § 11137(c) "confers immunity on any person or entity who makes a report to the NPDB," *id.* at 19. *Third*, MSI claimed that Count 5 "fails for multiple reasons," including (as relevant here) that "[t]here is no allegation in the SAC to support the existence of a fiduciary duty[.]" *Id.* at 21.

We referred the MTD to Magistrate Judge Strauss for a Report and Recommendation. *See* Order of Referral [ECF No. 115]. After holding a hearing on the MTD, *see* Jan. 5, 2024, Paperless Minute Entry [ECF No. 118], Magistrate Judge Strauss recommended that we grant in part and deny in part the MTD, *see* R&R at 19. As to Counts 1 and 2, Magistrate Judge Strauss suggested that we dismiss those counts *without prejudice* because Daly "does [not] oppose MSI's request for dismissal for the declaratory judgment counts—and has instead indicated she does not wish to prosecute those counts[.]" *Id.* at 6 n.6. As to Counts 3 and 4, Magistrate Judge Strauss rejected all of MSI's arguments and recommended that we deny the MTD. *See id.* at 16 ("[W]hen construing all reasonable inferences in Daly's favor, Daly has sufficiently alleged defamation per se claims based on MSI's reports filed in the NPDB[.]"). Finally, as to Count 5, Magistrate Judge Strauss asked us to dismiss Daly's breach-of-fiduciary-duty claim because she "failed to sufficiently allege facts that would establish MSI had a fiduciary relationship with her." *Id.* at 19.

Both parties objected to the R&R. MSI contends that Magistrate Judge Strauss erred when he recommended "that MSI's Motion should be denied with respect to Counts [3 and 4]." MSI

Objections at 6. And Daly says that Magistrate Judge Strauss improperly recommended dismissing Count 5 with prejudice because "the Court did not consider Count [5] as amended." Daly Objections at 2. The matter is now ripe for our review.

## THE LAW

District courts must review *de novo* any part of a magistrate judge's disposition that has been properly objected to. *See* FED. R. CIV. P. 72(b)(3). Although Rule 72 itself is silent on the standard of review, the Supreme Court has acknowledged that Congress's intent was to require a *de novo* review only where objections have been properly filed—and not when neither party objects. *See Thomas v. Arn*, 474 U.S. 140, 150 (1985) ("It does not appear that Congress intended to require district court review of a magistrate [judge]'s factual or legal conclusions, under a *de novo* or any other standard, when neither party objects to those findings."). "If no objection or only [a] partial objection is made to the magistrate judge's report, the district judge reviews those unobjected portions for clear error." *Macort v. Prem, Inc.*, 208 F. App'x 781, 784 (11th Cir. 2006) (quoting *Johnson v. Zema Sys. Corp.*, 170 F.3d 734, 739 (7th Cir. 1999) (cleaned up)).

When a party timely objects to a magistrate judge's report and recommendation, the district judge must make a *de novo* determination "of those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1); *see also Leonard v. Polk Cnty. Sheriff's Dep't*, 2019 WL 11641375, at *1 (M.D. Fla. Apr. 16, 2019) (Jung, J.). "Parties filing objections to a magistrate's report and recommendation must specifically identify those findings objected to. Frivolous, conclusive, or general objections need not be considered by the district court." *United States v. Tardon*, 493 F. Supp. 3d 1188, 1209 (S.D. Fla. 2020) (Lenard, J.) (quoting *Marsden v. Moore*, 847 F.2d 1536, 1548 (11th Cir. 1988)). The "[f]ailure to object to the magistrate [judge]'s factual findings after notice precludes a later attack on these findings." *Lewis v. Smith*, 855 F.2d 736, 738 (11th Cir. 1988) (citation omitted).

To survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). To meet this "plausibility standard," a plaintiff must "plead[ ] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ibid.* (citing *Twombly*, 550 U.S. at 556). The standard "does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ibid.* (quoting *Twombly*, 550 U.S. at 555). "[T]he standard 'simply calls for enough fact to raise a reasonable expectation that discovery will reveal evidence' of the required element." *Rivell v. Private Health Care Sys., Inc.*, 520 F.3d 1308, 1309–10 (11th Cir. 2008) (quoting *Twombly*, 550 U.S. at 545). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678. On a motion to dismiss, "the court must accept all factual allegations in a complaint as true and take them in the light most favorable to plaintiff." *Dusek v. JPMorgan Chase & Co.*, 832 F.3d 1243, 1246 (11th Cir. 2016).

## ANALYSIS

Before we get into the parties' objections, we'll quickly review the relevant, unobjected-to part of the R&R—Judge Strauss's recommendation that we dismiss Counts 1 and 2 of the SAC—which we evaluate only for clear error. *See Burgos v. Walmart Stores, Inc.*, 2023 WL 7521634, at *1 (S.D. Fla. Nov. 14, 2023) (Altman, J.) ("Those portions of a magistrate judge's report and recommendation to which no objection has been made are reviewed for clear error." (quoting *Tardon*, 493 F. Supp. 3d at 1209)).

Towards the end of the MTD hearing, Daly's counsel indicated that she was willing "to withdraw those two particular counts [Counts 1 and 2]." MTD Hearing Tr. [ECF No. 134] at 60:3–4. Counsel then filed a "Response to the Declaratory Judgment Counts," in which she expressly

8

"consent[ed] to the dismissal of those counts without prejudice, because it is not yet known whether the NPDB can grant the relief requested or if it is deemed beyond the scope of the NPDB's authority." Plaintiff's Response to Declaratory Judgment Counts [ECF No. 119] at 1. Since "Daly does oppose MSI's request for dismissal of the declaratory judgment counts," R&R at 6 n.6, we **ADOPT** Magistrate Judge Strauss's recommendation to dismiss Counts 1 and 2 of the SAC without prejudice.

That leaves us with Counts 3, 4, and 5. MSI wants us to adopt the R&R as to Count 5 and reject it as to Counts 3 and 4. *See* MSI Objections at 17. Daly wants us to do the opposite—adopt the R&R as to Counts 3 and 4 but reject it as to Count 5. *See* Daly Objections at 5. We decline both invitations and **OVERRULE** both parties' Objections.

## I.    MSI's Objections on Counts 3 and 4

Counts 3 and 4 of the SAC allege that MSI defamed Daly *per se* by sending two separate reports to the NPDB. These reports alleged (falsely, according to Daly) that Daly "was 'negligent' and had engaged in 'improper performance' which resulted in a 'major permanent injury' to the Patient[.]" SAC ¶¶ 74, 85. MSI moved to dismiss these counts for four reasons: (1) that the Reports didn't include false statements and "were merely recitations of the 'allegations' of the injured party (i.e., the Patient)," MTD at 15; (2) that the reports were protected by a statutory privilege in the Health Care Quality Improvement Act of 1986 ("HCQIA"), 42 U.S.C. § 11137(c), *id.* at 18; (3) that the "SAC d[id] not satisfy the requirements for pleading defamation per se," *ibid.*; and (4) that the Reports "satisf[ied] the essential elements of a qualified privilege," *id.* at 17.

On each of these four points, as we've said, Magistrate Judge Strauss disagreed with MSI. After considering MSI's position that the NPDB Reports merely recited the Patient's allegations in accordance with the HCQIA—which requires insurers to report "a description of the acts or omissions and injuries or illnesses upon which the action or claim was based," R&R at 11–12 (quoting 42 U.S.C. § 11131(b))—Magistrate Judge Strauss found that, according to Daly's allegations, MSI *knew*

the "statements that there were *allegations* of negligence and improper performance against her were false." *Id.* at 12. Daly, after all, alleged that the Patient's Draft Complaint "made no mention of Dr. Daly while describing the negligence of two other medical providers." SAC ¶ 21. Magistrate Judge Strauss also noted Daly's allegation that, during an informal encounter, she had told MSI's counsel that she "was not there that day" and "was not supervising." R&R at 13 (quoting SAC ¶ 27). Taking these allegations as true—and construing all reasonable inferences in Daly's favor—Magistrate Judge Strauss found that "these allegations are sufficient to infer that, before it filed its report in the NPDB, MSI knew the injured patient was not pursuing claims of negligence against Daly." *Ibid.*

For the same reason, Magistrate Judge Strauss rejected MSI's statutory-immunity argument under the HQCIA. Statutory immunity, Magistrate Judge Strauss explained, only "applies to statements made 'without knowledge of the falsity of the information contained in the report.'" *Id.* at 14 (quoting 42 U.S.C. § 11137(c)). Because of Daly's allegations that MSI *knew* the Patient wasn't pursuing claims against her, Magistrate Judge Strauss "[could not] at this stage conclude that MSI's statements were 'without knowledge of falsity.'" *Ibid.*

Magistrate Judge Strauss next found that Daly had sufficiently pled a claim of defamation per se under Florida law. Although Magistrate Judge Strauss agreed that Daly hadn't shown "that the alleged defamatory statements [charged] Daly with having committed an infamous crime, [or subjected] her to 'hatred, distrust, ridicule, contempt, or disgrace,'" he nevertheless concluded that "Daly adequately allege[d] MSI's statements within the [NPDB Reports] injured her in her profession." *Ibid.* That's because: (1) the statements, "considered as the 'common mind would naturally understand' them, . . . would plausibly injure Daly in her profession as a doctor"; and (2) two professional liability insurers, in fact, "rejected Daly from coverage." *Id.* at 15 (quoting *Richard v. Gray*, 62 So. 2d 597, 598 (Fla. 1953)).

Finally, Magistrate Judge Strauss couldn't "decide, at this stage, whether the doctrine of qualified privilege shields MSI from Daly's suit." *Id.* at 16. As with MSI's first and second arguments, Magistrate Judge Strauss reiterated that "Daly contends that the patient did not make (or, at least, maintain) allegations of negligence and improper performance against Daly (and that MSI knew this), while MSI argues the opposite." *Ibid.* Given the "dispute between the parties regarding the essential facts and circumstances of this case," Magistrate Judge Strauss said, MSI cannot demonstrate—at this stage of the case—that it had a "duty to speak" and that it acted in "good faith." *Ibid.* "[W]hen construing all reasonable inferences in Daly's favor," Judge Strauss concluded, "Daly has sufficiently alleged defamation per se claims based on MSI's reports filed in the NPDB, and the third and fourth causes of action should not be dismissed." *Ibid.*

MSI advances four objections to Magistrate Judge Strauss's reasoning. *First*, MSI says that the inferences Magistrate Judge Strauss drew from the SAC were unreasonable. *See* MSI Objections at 6 ("It is therefore respectfully submitted that the inferences relied upon in reaching these conclusions were not 'reasonable,' and are contradicted by the documents themselves."). According to MSI, the *only* reasonable inference one can draw from the SAC is that Daly, at all relevant times, *remained* a potential defendant in the Patient's proposed lawsuit. *See id.* at 11 ("Here, the factual allegations and inferences suggesting the claimant somehow decided that Daly was no longer the subject of the claimant's contemplated lawsuit simply because she was not named in the Unfiled Complaint is belied by counsel for the claimant's statements in the Demand Letter[.]"). *Second*, and relatedly, MSI contends that Magistrate Judge Strauss improperly relied on the same unreasonable inferences in deciding *not* to apply statutory immunity (and/or the qualified privilege). *See id.* at 14 ("As stated above, Daly's inference that MSI knew that she did not do anything wrong since she was not named in the Unfiled Complaint is unreasonable and contradicted by the documents and case law cited herein."). *Third*, MSI castigates Magistrate Judge Strauss for failing to consider whether "MSI was acting with malice or that

it intended to injure Daly in her trade or profession." *Id.* at 15. *Fourth*, MSI argues that Magistrate Judge Strauss shouldn't have "accept[ed] as true certain allegations in the SAC with respect to purported conversations between MSI and defense counsel" because Daly failed to provide any factual support that "a conversation [actually] took place between defense counsel and MSI[.]" *Id.* at 15–16. We'll consider—and reject—each of these objections in turn.

### A.    MSI's First and Second Objections: Drawing Unreasonable Inferences

In his R&R, Magistrate Judge Strauss concluded that, when "construing all reasonable inferences in Daly's favor," the allegations in the SAC were "sufficient to infer that, before it filed its report in the NPDB, MSI knew the injured patient was not pursuing claims of negligence against Daly." R&R at 13. In Judge Strauss's view, then, the SAC sufficiently alleged that "MSI (through insurance defense counsel) had reason to know that the patient had dropped her allegations against Daly, based on insurance defense counsel's discussion with the patient's counsel and the fact that the draft complaint did not mention Daly (and similarly did not mention another doctor named in the notice who was conclusively not involved in the patient's care)." *Id.* at 13–14. Indeed, according to the R&R, Daly *herself* "had given insurance defense counsel reason to believe that she was not involved in the patient's care, and insurance defense counsel's actions were consistent with an understanding that Daly was not involved in the case (considering that insurance defense counsel did not meet with Daly)." *Id.* at 14. Daly thus "plausibly alleged that MSI's statements in the reports to NPDB were false (and that MSI knew they were false)[.]" *Ibid.*

Critically, Magistrate Judge Strauss *agreed* with MSI that the Patient's demand letter "evinced an intention to pursue claims against Daly," but he reiterated his conclusion that this "potentially reasonable inference" wasn't dispositive because "it is not the only reasonable inference[.]" *Id.* at 13. Having found that, according to the SAC's well-pled allegations, MSI knew (or should have known) that the Patient was no longer pursuing litigation against Daly, Magistrate Judge Strauss easily rejected

MSI's statutory-immunity and qualified-privilege contentions. *See id.* at 14 ("By the same token, MSI cannot compel dismissal based on HCQIA's statutory immunity. . . . [G]iven Daly's allegations, the Court cannot at this stage conclude that MSI's statements were 'without knowledge of falsity.'"); *id.* at 16 ("These are disputes that bear on whether MSI can demonstrate both a duty to speak and good faith. Therefore, the Court may not decide, at this stage, whether the doctrine of qualified privilege shields MSI from Daly's suit.").

MSI objects to this conclusion. It insists that "Daly never actually had the temerity to state in writing that the underlying claimant had lost interest in pursuing a claim against her," and that, if any opposite conclusion could be inferred from the SAC, this finding would necessarily be based on "purely conclusory contention[s]" that are "belied by the documents" Daly attached to the SAC. MSI Objections at 6–7. It specifically attacks Magistrate Judge Strauss's reliance on the Draft Complaint— which didn't "allege[ ] medical malpractice against any doctor, much less Daly"—because the Draft Complaint "was limited to products liability claims." *Id.* at 8–9. MSI also points out that "Daly executed the settlement agreement and was given a release," which (the Defendant says) undermines any inference that "MSI 'knew' the published statements were not true[.]" *Id.* at 11. Lastly, MSI argues that Magistrate Judge Strauss *should have* considered the settlement agreement and a decision from the U.S. Department of Health and Human Services (the "HHS Decision") because they "are not merely 'central' to Daly's claim—they are indispensable." *Id.* at 12.

Magistrate Judge Strauss correctly found that, if you "draw all reasonable inferences in favor of the nonmovant," the SAC states a plausible defamation *per se* claim. R&R at 13 n.11 (quoting *Newton v. Duke Energy Fla., LLC*, 895 F.3d 1270, 1275 (11th Cir. 2018)). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Iqbal*, 556 U.S. at 678; *see also Baker v. Mount*, 2013 WL 12430756, at *2 (M.D. Fla. June 7, 2013) (Scriven, J.) ("A claim has facial plausibility when the plaintiff pleads factual content

that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." (citing *Twombly*, 550 U.S. at 556)). Several of the SAC's allegations, when viewed in the light most favorable to Daly, indicate that MSI knew (or should have known) that Daly had nothing to do with the botched May 30, 2018, regenerative therapy.

For one, Daly *herself* told MSI's counsel that she "was not there that day" and that she "was not supervising" when the procedure took place. SAC ¶ 27. For another, the Patient's Draft Complaint (unlike the Notice of Intent) "set forth detailed factual allegations regarding the medical negligence," but "made no allegations" against Daly or a different "physician who had left the Clinic before the alleged incident but who was nevertheless named in the Notice of Intent." *Id.* ¶ 21. Finally, MSI and its counsel treated Daly differently from the other healthcare providers who were named in the Notice of Intent and the Draft Complaint—suggesting that MSI *knew* Daly "was not considered a putative defendant by the Patient/Claimant[.]" Response to MSI Objections at 8; *see also, e.g.*, SAC ¶ 25 ("[Daly] never met with defense counsel at any time either before or after the issuance of the Notice of Intent other than at the mediation. By contrast, those healthcare providers who were alleged in the Complaint to have been involved in the care and treatment of the Patient, met with defense counsel hired by MSI."); *id.* ¶ 30 ("Defendant issued reservation of rights letters to the healthcare provider(s) alleged to have been involved in the incident. MSI never sent Dr. Daly a reservation of rights letter."). When we view all these allegations in the light most favorable to Daly, we agree that they "are sufficient to infer that, before it filed its report in the NPDB, MSI knew the injured patient was not pursuing claims of negligence against Daly." R&R at 13.

MSI calls into question the accuracy of many of these allegations. "[H]ow is it 'reasonable,'" MSI asks, "to infer from the demand letter that the Claimant does not intend to pursue medical malpractice litigation against the doctors named in the NOI, when the Demand Letter states in no uncertain terms that the claimant intends to do precisely that?" MSI Objections at 9. And how, MSI

continues, "is it reasonable to infer that Daly was not involved in the patient's care simply because she was not named in the [Draft] Complaint attached to the Demand Letter?" *Ibid.* Plus, MSI reminds us, "Daly executed the settlement agreement and was given a release"—thus undermining any inference that MSI *knew* the allegations against Daly were false. *Id.* at 11.

These sound like great arguments for MSI to make at summary judgment (or at trial), but they're simply premature at the motion-to-dismiss stage. MSI is right that "no one—not even Daly—contends that she was involved in the marketing and sale of the stem cell 'products,' or the operation of the stem cell 'business.' Hence, there would be no need for her to be named in the [Draft] Complaint, which was limited to products liability claims." *Id.* at 9. But the Draft Complaint's factual allegations *also* laid out the Patient's medical-malpractice allegations, just as the Notice of Intent did—with one crucial difference: Unlike the Notice of Intent, the Draft Complaint *never* "identif[ies] Dr. Daly or the other physician who had left prior to the alleged medical malpractice incident." Response to MSI Objections at 8; *compare* Draft Complaint [ECF No. 38-1] ¶¶ 49–76 (describing the botched May 30, 2018, procedure), *with* Notice of Intent [ECF No. 90] at 3 (same).[3] As Magistrate Judge Strauss

---

[3] MSI relies on two cases—*Martin-Casariego v. Linale*, 350 So. 3d 166 (Fla. 3d DCA 2022), and *Roberts v. Davol, Inc.*, 2010 WL 9593054 (S.D. Fla. June 1, 2010) (Jordan, J.)—for the proposition that "there would be no basis to name a person as a defendant in a products liability complaint where that individual had no participation in the product development, marketing and the like and, vice versa, there would be no basis to name a person that did not render medical care or services in a medical malpractice complaint." MSI Objections at 9. MSI takes these cases to mean that it was unreasonable for Magistrate Judge Strauss to find that "Daly was no longer the subject of the claimant's contemplated lawsuit simply because she was not named in the [Draft] Complaint[.]" *Id.* at 11. But both of MSI's cases involved a separate issue: whether the plaintiffs there had complied with Florida's pre-suit notice requirements before asserting their medical-malpractice claims. *See, e.g.*, *Martin-Casariego*, 350 So. 3d at 167 ("Because respondents' claim is a medical negligence action, they were required to comply with the presuit notice requirements of chapter 766. Since they did not do so, the trial court should have dismissed the amended complaint."); *Roberts*, 2010 WL 9593054, at *2 ("When a plaintiff files a complaint sounding in medical negligence without complying with the presuit investigation and notification procedures, the complaint must be dismissed."). Since the Draft Complaint and the Notice of Intent outlined the very same medical-malpractice allegations—and given the Draft Complaint's *conspicuous* exclusion of Daly from these allegations—MSI's cases do nothing to undermine Magistrate Judge Strauss's natural inference "that the absence of any reference to Dr. Daly

correctly observed, the fact that MSI can "make[ ] a potentially reasonable inference" from these documents is irrelevant because Daly's alternative inference is likewise reasonable. R&R at 13 n.11.

Even if we agreed with MSI that the Draft Complaint contradicts *some* of the SAC's allegations, Daly adequately supports her defamation claims with *different* allegations. As Daly explains in her Response to MSI's Objections:

> The Magistrate Judge also referred to other facts in the SAC giving rise to the inference that Plaintiff was not considered a putative defendant by the Patient/Claimant, including the following:
>
> • Insured defense counsel retained by MSI reported to MSI that he spoke with the Patient/Claimant's counsel about which healthcare providers would be named if a lawsuit was filed and Plaintiff was not one of them. R&R pg. 13 (citing SAC ¶ 32).
>
> • Plaintiff spoke to MSI's retained insurance defense counsel and informed him that she was not present on the date of the incident and did not supervise those healthcare providers who treated the Patient/Claimant. *Id.* (citing SAC ¶ 27).
>
> • MSI's retained insurance defense counsel never met with Plaintiff but met repeatedly with those healthcare providers who were involved with the care and treatment of the Patient/Claimant. *Id.* (citing SAC ¶¶ 25, 27 and 29).

Response to MSI Objections at 7–8 (citing R&R at 13). In other words, Magistrate Judge Strauss didn't just rely on the differences between the Draft Complaint and the Notice of Intent to draw his inference that MSI *should have known* that Daly wasn't involved in the Patient's care. The SAC included many *other* factual allegations to support this inference—even if some of the exhibits contradicted *other* parts of the SAC. That's plainly good enough for now, and Magistrate Judge Strauss didn't err in holding otherwise. *See Iqbal*, 556 U.S. at 678 ("A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the

---

in the [Draft] Complaint . . . indicated that the Patient/Claimant no longer intended to pursue a claim against Dr. Daly." Response to MSI Objections at 9.

misconduct alleged."); *Fin. Sec. Assurance, Inc. v. Stephens, Inc.*, 500 F.3d 1276, 1282 (11th Cir. 2007) ("Stated differently, the factual allegations in a complaint must possess enough heft to set forth a plausible entitlement to relief[.]" (cleaned up)).

Still resisting, MSI says that Magistrate Judge Strauss misapplied the "incorporation-by-reference" doctrine when he decided not to consider the settlement agreement and the HHS Decision.[4] Under that doctrine, a district court "may properly consider a document not referred to or attached to a complaint . . . if the document is (1) central to the plaintiff's claims; and (2) undisputed, meaning that its authenticity is not challenged." *Johnson v. City of Atlanta*, 107 F.4th 1292, 1300 (11th Cir. 2024). Magistrate Judge Strauss considered the Notice of Intent because "Daly represented that she does not oppose the Court reading the Notice for background information," R&R at 9, but he *did not* consider the settlement agreement or the HHS Decision because neither was "central" to Daly's claims, *see ibid.* ("[Daly] does not allege their contents nor rely on their contents to make her claim. Nor are the contents of these documents necessary to her claims. Therefore, these exhibits are not central to her claim, and this Court may not derive facts from these attachments.").

MSI now says that both the settlement agreement and the HHS Decision are "central" and "indispensable" to Daly's defamation claims because, without these documents, "there [could be] no report to the NPDB." MSI Objections at 12. We disagree. The settlement agreement and the HHS Decision are certainly *relevant* to Daly's defamation claims—and they may be *relevant* to MSI's defenses—but "relevant" and "central" are two different things. *See, e.g., Adamson v. Poorter*, 2007 WL 2900576, at *3 (11th Cir. Oct. 4, 2007) ("A document is not 'central' merely because it is directly

---

[4] The parties agree that Magistrate Judge Strauss correctly considered the Draft Complaint and the NPDB Reports—each of which were attached to the SAC—since "[a] copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes." FED. R. CIV. P. 10(c); *see also F.T.C. v. AbbVie Prod. LLC*, 713 F.3d 54, 63 (11th Cir. 2013) ("At the motion-to-dismiss stage, we consider the facts derived from a complaint's exhibits as part of the plaintiff's basic factual averments.").

responsive to a factual allegation."); *Orthopaedic Care Specialists, P.L. v. United Healthcare Servs., Inc.*, 2021 WL 8154530, at *3 (S.D. Fla. Nov. 15, 2021) (Middlebrooks, J.) ("While the terms of the patients' plans may be central to *Defendants' defenses*, . . . that does not render the documents central to *Plaintiff's claims*."). And those documents are certainly not central to Daly's claims. After all, Daly didn't need either of these documents to allege that MSI knowingly made false statements to the NPDB and "knew or should have known that the NPDB would forward this false report to the Florida Department of Health and the Florida Office of Insurance Regulation." SAC ¶ 76. At best, the settlement agreement and HHS Decision explain *how* and *why* the NPDB Reports were promulgated, *see ibid.* ("Without the settlement agreement, there is no settlement payment. Without the settlement payment, there is no report to the NPDB."), but Daly didn't need either of these documents to allege that the NPDB Reports defamed her, *cf. Roberts v. Gordy*, 2015 WL 11202323, at *3 (S.D. Fla. Feb. 6, 2015) (Williams, J.) ("Accordingly, if the document is 'so central to the claim that it served as a basis for the complaint,' then the incorporation by reference doctrine will apply." (quoting *Bryant v. Avado Brands, Inc.*, 187 F.3d 1271, 1280 n.16 (11th Cir. 1999))). Since neither the settlement agreement nor the HHS Decision are "a necessary part of [Daly's] effort to make out [defamation] claim[s]," *Day v. Taylor*, 400 F.3d 1272, 1276 (11th Cir. 2005); *see also, e.g.*, *Roberts v. Carnival Corp.*, 824 F. App'x 825, 826 (11th Cir. 2020) ("The ticket contract is not central to [the plaintiff's] claims because it is not a necessary or essential part of Roberts's effort to show that she was injured due to Carnival's negligence."), Magistrate Judge Strauss correctly refused to consider them. For all these reasons, we **OVERRULE** MSI's first objection.

And, for similar reasons, we overrule MSI's second objection. Here, MSI complains that Magistrate Judge Strauss rejected its statutory-immunity and qualified-privilege defenses because of "unreasonable inferences" that were "contradicted by the documents and the case law cited [in MSI's

Objections].” MSI Objections at 14. As we've said, however, we don't think Magistrate Judge Strauss drew any unreasonable inferences from the SAC. We thus **OVERRULE** MSI's second objection.

### B.      MSI's Third Objection: Express Malice

In its third objection, MSI says that Magistrate Judge Strauss "failed to address" express malice in the R&R. MSI Objections at 14. According to MSI, Daly must "demonstrate by a preponderance of the evidence that MSI acted with express malice 'where the primary motive for the statement is shown to be an intention to injure the Plaintiff.'" *Ibid.* (quoting *Bush v. Raytheon Co.*, 2009 WL 10669904, at *9 (M.D. Fla. Sept. 8, 2009) (Bucklew, J.), *aff'd*, 373 F. App'x 936 (11th Cir. 2010)). Since Daly "fail[s] to allege that MSI was motivated by express malice or intended to injure Daly in submitting the report," MSI says, Magistrate Judge Strauss should have recommended dismissal. *Id.* at 15.

But Daly *doesn't* need to plead express malice. To state a defamation per se claim under Florida law, a plaintiff must allege that the publication, "when considered alone without innuendo[,] . . . tends to subject one to hatred, distrust, ridicule, contempt or disgrace, or tends to injure one in his trade or profession, or if it imputes to another conduct, characteristics, or a condition incompatible with the proper exercise of his lawful business, trade, profession or office." *Barry College v. Hull*, 353 So. 2d 575, 578 (Fla. 3d DCA 1977) (first citing *Adams v. News-Journal Corp.*, 84 So. 2d 549, 551 (Fla. 1955); and then citing *Miami Herald Publ'g Co. v. Brautigam*, 127 So. 2d 718, 722 (Fla. 3d DCA 1961)). Because a per se defamatory statement is "'so obviously defamatory' and 'damaging to one's reputation,' it generally 'gives rise to an *absolute presumption both of malice and damage*.'" *Corsi v. Newsmax Media, Inc.*, 519 F. Supp. 3d 1110, 1119 (S.D. Fla. 2021) (Ruiz, J.) (emphasis added) (quoting *Wolfson v. Kirk*, 273 So. 2d 774, 776 (Fla. 4th DCA 1973)). In short, Daly doesn't need to plead express malice, and Magistrate Judge Strauss didn't err in failing to consider that element. *See Lawnwood Med. Ctr., Inc. v. Sadow*, 43 So. 3d 710, 727 (Fla. 4th DCA 2010) ("Florida has thus singled out defamation per se for special rules in

civil tort litigation. In *Montgomery v. Knox*, 3 So. 211, 217 (1887), the court held that statements defamatory per se are presumed harmful as a matter of law. In *Abraham v. Baldwin*, 42 So. 591, 592 (1906), the court held that with defamation per se 'the law presumes malice in their utterance' making it unnecessary to prove express malice."); *Scott v. Busch*, 907 So. 2d 662, 666 (Fla. 5th DCA 2005) ("[T]he second amended complaint alleged Busch made the statement that Treworgy 'illegally obtained building permits,' with malice, and that the statement was false. . . . However, we question whether at this pleading stage [this was] necessary since defamation *per se* presumes malice[.]").[5] We therefore **OVERRULE** MSI's third objection.

## C.    MSI's Fourth Objection: Reliance on Purported Conversations

MSI's fourth (and final) objection concerns Magistrate Judge Strauss's decision to "accept as true certain allegations in the SAC with respect to purported conversations between MSI and defense counsel." MSI Objections at 15. Specifically, Magistrate Judge Strauss explicitly relied on the conversation recounted in paragraph 32 of the SAC, which alleges that "[i]nsurance defense counsel also relayed to MSI a discussion he had with Claimant's counsel in which Claimant's counsel indicated that those healthcare providers not named as parties in the Complaint would be named if a lawsuit was filed. Claimant's counsel identified those healthcare providers to insurance defense counsel. Dr.

---

[5] Two final points here. *First*, MSI's reliance on *Bush* is misplaced. MSI cites this case for the proposition that Daly "must demonstrate by a preponderance of the evidence that MSI acted with express malice" *even if* a "qualified privilege did not apply[.]" MSI Objections at 14. But *Bush* says precisely the opposite. *See Bush*, 2009 WL 10669904, at *9 ("*Because the Court finds that a qualified privilege protects Raytheon's reviews and rankings*, Bush must show by a preponderance of evidence that Raytheon acted with express malice." (emphasis added)). *Second*, we acknowledge that a plaintiff must still allege express malice—even in a defamation per se action—*if* the defendant is either a "media defendant" or a "public figure." *See Corsi*, 519 F. Supp. 3d at 1119 ("[A] plaintiff suing a media defendant must nevertheless plead malice and damages."); *Reed v. Chamblee*, 2023 WL 6292578, at *9 (M.D. Fla. Sept. 27, 2023) (Corrigan, C.J.) ("All three types of defamation [under Florida law] also require a plaintiff to plead and prove actual malice if he is a public figure."). But MSI never alleges that Daly is a "media defendant" or a "public figure," *see generally* MTD; MSI Objections, and Daly specifically alleges that she's "a private figure." SAC ¶¶ 81, 91. This limited exception thus doesn't apply here.

Daly was not among the healthcare providers identified." SAC ¶ 32. MSI says that Daly "has no direct knowledge of [these] communications" and that Magistrate Judge Strauss wasn't permitted to accept allegations that "are based solely 'upon information and belief[.]'" MSI Objections at 15 (quoting *Balesia Techs., Inc. v. Cuellar*, 2023 WL 3491214, at *2 (S.D. Fla. May 17, 2023) (Ruiz, J.)).

But we agree with Daly that she "alleged the source of her information—MSI." Response to MSI Objections at 15. Although we "do not have to take as true allegations based mere 'upon information and belief,'" we *should* "accept such allegations as true when they are supported by non-conclusory factual allegations." *Cuellar*, 2023 WL 3491214, at *2 (quoting *Smith v. City of Sumiton*, 578 F. App'x 933, 936 n.4 (11th Cir. 2014)). And Daly alleged in her SAC that she "learned that insurance defense counsel retained by MSI . . . regularly communicated with MSI" about the Patient's putative lawsuit "[d]uring the course of discovery." SAC ¶ 28. In other words, Daly's "upon information and belief" allegations about the conversations between MSI and its insurance defense counsel are supported by evidence she uncovered during discovery—evidence she's described in her SAC. That's sufficient for now. *See Belik v. Carlson Travel Grp., Inc.*, 864 F. Supp. 2d 1302, 1311 (S.D. Fla. 2011) (Altonaga, J.) ("Pleading on information and belief is still permissible where, as here, the facts are 'peculiarly within the possession and control of the defendant.'" (quoting *Arista Records, LLC v. Doe 3*, 604 F.3d 110, 120 (2d Cir. 2010))).

But here's the thing: As we just explained in overruling MSI's first and second objections, even without this "information and belief" allegation, the SAC *still* includes enough factual allegations to support Daly's defamation per se claims. We therefore **OVERRULE** MSI's fourth objection and fully **ADOPT** Magistrate Judge Strauss's R&R as to Counts 3 and 4.

## II.     Daly's Objection as to Count 5

Count 5 of the SAC asserts a breach-of-fiduciary-duty claim against MSI. *See* SAC at 16. Here, Daly's theory of liability is somewhat attenuated. At the time of the May 30, 2018, procedure, Daly

"was covered by a policy issued by Evanston Insurance Company" for services she performed at the Weston Clinic. *Id.* ¶ 8. Evanston "is wholly owned by MSI Insurance Company." *Id.* ¶ 9. Our Defendant, MSI, "is also wholly owned by MSI Insurance Company" and "manages the claims and all parts of the claims process for Evanston Insurance." *Id.* ¶ 10. Based on this web of corporate relationships, Daly contends that MSI owed her a fiduciary duty to "conduct a good faith investigation into the claims and into Dr. Daly's role (or lack thereof) in the underlying incident." *Id.* ¶ 96; *see also id.* ¶ 95 ("Once Dr. Daly was added to the Evanston Policy as an insured, the insured relationship became a fiduciary one; that is MSI, as the claims administrator for Evanston, became Dr. Daly's fiduciary.").

Magistrate Judge Strauss rejected this unique theory of fiduciary duty. Although "[n]umerous opinions within this District and throughout the state courts in Florida routinely conclude that a fiduciary relationship could exist between insurer and insured," Daly merely alleged that MSI was "a third-party claims administrator for her insurer." R&R at 17. Magistrate Judge Strauss recognized the well-settled law that an "insurer owes the duty of good faith and fair dealing to its insured, [but] agents of the insurer, even agents whose acts may have been material to a breach of the duty, do not normally owe the insured a duty of good faith." *Ibid.* (quoting 44 C.J.S. INSURANCE § 313 (2023)). And, he noted, Daly "provide[d] no authority supporting her supposition that an insurer's agent owes a fiduciary duty to an insured (or can be sued directly for a breach of that fiduciary duty) whenever the insurer itself owes a fiduciary duty." *Id.* at 18; *see also ibid.* ("If 'the only thing that has been alleged' about the relationship between Evanston and MSI is that they are owned by the same parent company, it is entirely unclear then why Evanston's fiduciary duty *ipso facto* inures to MSI. Indeed, if Daly is not arguing that MSI owed a fiduciary duty by virtue of being Evanston's agent, then it is even less clear what the source of MSI's alleged fiduciary duty was." (quoting MTD Response at 20)).

Daly *does not* object to Magistrate Judge Strauss's legal analysis—*viz.*, that an insurer's fiduciary duty to its insured can't be imputed to its agents. *See generally* Daly Objections.[6] Instead, Daly says that Magistrate Judge Strauss should have considered "the version of her Amended Complaint filed at [ECF No. 73]" because "MSI never objected in writing to these corrections and the Court only denied the motion to amend to the extent it added a new Count [6] for negligence." Daly Objection at 2. MSI responds "that the SAC is the operative pleading in this action," and that Daly is simply trying to relitigate our prior order denying her motion for leave to file a third amended complaint. Response to Daly Objections at 4; *see also* R&R at 6 n.6 ("In addition to withdrawing her declaratory judgment claims, Daly's 'supplement' [DE 119] also requests the Court to review the version of her SAC attached to her Motion for Leave to Serve and File an Amended Complaint [DE 73]. However, the Court denied Daly's Motion for Leave in its entirety. [DE 78]. Therefore, regardless of the explanation in Daly's 'supplement,' the SAC (as filed at [DE 59]) is clearly the operative complaint.").

We agree with MSI and Magistrate Judge Strauss. Daly filed a motion for leave to file a third amended complaint on September 7, 2022. *See* Motion for Leave [ECF No. 73]. We denied that motion because Daly tried to add "a sixth count of negligence," which "would both prejudice the Defendant and significantly delay this case." Sept. 21, 2022, Paperless Order [ECF No. 78]. Our order never said (or implied) that we would allow the rest of the third amended complaint to stand. And Daly's suggestion that we permitted such an odd, piecemeal emendation of her claims is belied by the plain language of our September 21, 2022, Paperless Order. *Even if* that order were ambiguous, our September 28, 2022, Order reiterated, in no uncertain terms, that "[t]he Plaintiff's Second Amended Complaint [ECF No. 59] *is currently the operative pleading.*" [ECF No. 86] at 1 (emphasis added). Since

---

[6] We therefore find that Magistrate Judge Strauss didn't clearly err when he declined to impute to MSI the fiduciary duty Evanston may have owed Daly. *See Burgos*, 2023 WL 7521634, at *1 ("Those portions of a magistrate judge's report and recommendation to which no objection has been made are reviewed for clear error.").

our rulings on this point were clear, Magistrate Judge Strauss correctly treated the SAC as the operative complaint in the case.

Daly's final argument is that Magistrate Judge Strauss incorrectly relied on "*Eiber Radiology, Inc. v. Toshiba Am. Med. Sys., Inc.*, 673 F. App'x 925 (11th Cir. 2016) for the proposition that Plaintiff should not be granted more than one opportunity to amend" because Daly "did not have that opportunity" as to Count 5. Daly Objections at 4. But Daly cites no law for the proposition that, under Rule 15, we must *sua sponte* grant plaintiffs additional opportunities to amend *specific* counts. *Cf. Wagner v. Daewoo Heavy Indus. Am. Corp.*, 314 F.3d 541, 542 (11th Cir. 2002) (en banc) ("A district court is not required to grant a plaintiff leave to amend his complaint sua sponte when the plaintiff, who is represented by counsel, never filed a motion to amend nor requested leave to amend before the district court."). In any event, Daly has been on notice since *at least* September 28, 2022, *see* Sept. 28, 2022, Paperless Order [ECF No. 86], that her SAC was the operative complaint. Despite this understanding, she took no additional action to amend or correct Count 5. *See generally* Docket. We therefore agree with Magistrate Judge Strauss that dismissing Count 5 *with prejudice* is appropriate since holding otherwise would reward Daly's "undue delay" in seeking a proper amendment and "cause undue prejudice to the opposing party[.]" *Bryant v. Dupree*, 252 F.3d 1161, 1163 (11th Cir. 2001) (citing *Foman v. Davis*, 371 U.S. 178, 182 (1962)); *see also Eiber Radiology*, 673 F. App'x at 930 ("We do not find that the district court abused its discretion in declining to grant Plaintiff a second bite at this apple. Permitting another round of amendments would have unduly protracted the proceeding below and promoted judicial inefficiency.").

In short, we **OVERRULE** Daly's Objection and **ADOPT** Magistrate Judge Strauss's R&R in full as to Count 5.

## CONCLUSION

After careful review, therefore, we hereby **ORDER AND ADJUDGE** as follows:

1. Magistrate Judge Strauss's R&R [ECF No. 120] is **ACCEPTED and ADOPTED** in full. Both MSI's Objections [ECF No. 121] and Daly's Objections [ECF No. 122] are **OVERRULED**.

2. MSI's Motion to Dismiss [ECF No. 88] is **GRANTED in part** and **DENIED in part**. Counts 1 and 2 of the SAC are **DISMISSED without prejudice**. Count 5 of the SAC is **DISMISSED with prejudice**.

3. By **December 9, 2024**, the parties shall prepare and file an amended joint scheduling report, as required by Local Rule 16.1.

4. The Clerk is directed to **REOPEN** this case and **LIFT** the stay.

**DONE AND ORDERED** in the Southern District of Florida on November 26, 2024.

_____

**ROY K. ALTMAN**
**UNITED STATES DISTRICT JUDGE**

cc:     counsel of record